2017 OK CIV APP 27

**WILJO INTERIORS, INC., Appellant,**

v.

**David RIALS, Appellee, and the Oklahoma Workers' Compensation Commission, and Old Republic General Ins. Corp., Insurance Carrier.**

**Case Number: 114806**

Court of Civil Appeals of Oklahoma, Division No. 1.

Decided: 11/22/2016

Mandate Issued: 05/18/2017

Richard L. Blanchard, THE BLANCH-ARD LAW FIRM, P.C., Tulsa, Oklahoma, for Appellant,

Esther M. Sanders, SANDERS AND AS-SOCIATES, P.C., Tulsa, Oklahoma, for Appellees.

BRIAN JACK GOREE, JUDGE:

¶1 Appellant, Wiljo Interiors, Inc. (Employer), seeks review of an order of the Workers' Compensation Commission awarding surgical treatment to Appellee, David Rials (Claimant), for his right knee. Employer contends the award of surgery was against the clear weight of the evidence and contrary to law because the surgery was to correct degenerative joint disease. We affirm, holding that the Commission's order is neither contrary to law nor clearly erroneous in view of the reliable, material, probative and substantial competent evidence that the recommended surgery was connected to Claimant's acute injury.

## I.   Background

¶2 Claimant worked for Employer as a framer and drywall hanger. On September 3, 2014, Claimant slipped while cleaning up a job site, striking his right knee. He went to an urgent care clinic that day. X-rays were taken and he was diagnosed with knee sprain.

¶3 On October 6, 2014, Claimant was involved in a car accident. The emergency room treatment included a knee x-ray. The radiologist reported finding a "[d]eformity along the medial femoral condyle suggesting osteonecrosis . . . . No other fracture or dislocation."

¶4 Claimant's knee continued to worsen. The urgent care clinic referred Claimant to an orthopedist, Dr. Fox, who opined that Claimant had knee strain due to a "valgus injury" that was work-related. Dr. Fox treated him with injections, immobilization, and physical therapy. After Claimant filed his workers' compensation claim, the Commission appointed another orthopedist, Dr. Mittal, as Claimant's treating doctor. Dr. Mittal found Claimant had degenerative joint disease and recommended partial knee replacement to treat his "medial compartment disease."

¶5 Employer objected to Dr. Mittal's recommendation on the grounds Claimant's injury was not compensable under 85A Supp. 2013 2(9)(b)(5), which excludes from the definition of compensable injury:

any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/spondylolisthesis and spinal stenosis.

At Employer's request, the Commission appointed an IME. The IME opined that Claimant needed a total knee replacement rather than a partial replacement. At his deposition, the IME said that Claimant's right knee had an osteonecrotic lesion on the medial femoral condyle. He opined that the lesion was an acute injury caused by the fall at work. He said that the total knee replacement was needed to fix that lesion. However, he testified that he had not seen x-rays taken soon after the accident. The IME said that if the osteonecrosis was present in those x-rays, then he would conclude that it was pre-existing and not work-related.

¶ 6 Following the deposition, the attorneys provide the IME with x-rays taken eleven days after the accident. He then submitted a letter stating that the x-rays did not show significant changes from September 2014 to the date of his own examination. He concluded that "the work injury did not cause the underlying findings or degenerative changes found on the x-ray. Therefore, in summary, it is my opinion that the work-related injury did not cause the patient's underlying problem that is causing him pain in the knee."

¶ 7 At the hearing, the Commission's administrative law judge (ALJ) admitted the above evidence. Claimant testified that prior to the accident he had never had problems, injuries, or treatment to his right knee. He said since the accident, he has had burning, stabbing, and throbbing pain, as well as instability.

¶ 8 In her order, the ALJ acknowledged the IME's conclusion that the work-related event did not worsen Claimant's pre-existing degenerative condition, but relied on evidence that Claimant's knee was asymptomatic before the accident and was symptomatic afterwards in finding that the claimed event gave rise to the symptoms. The ALJ cited the IME's testimony that he was recommending surgery solely based on the symptoms. She concluded that Claimant's injury was compensable and awarded surgical treatment.

¶ 9 Employer requested review by the Commission, contending that Claimant's injury was not compensable because the reason for the recommended treatment was degenerative joint disease and arthritis. The Commission affirmed the ALJ's decision.

¶ 10 Employer appeals from that order, contending it was against the clear weight of the evidence and contrary to 85A O.S. Supp. 2013 2(9)(b)(5) and (g), 52, and 106. Employer also argues it was denied due process of law because the Commission arbitrarily and capriciously deviated from the statutory law and procedure.

## II. Standard of Review

¶ 11 In *Estenson Logistics v. Hopson*, 2015 OK CIV APP 71, ¶¶ 7-8, 357 P.3d 486, 488, the Court addressed the standard of review under the Administrative Workers' Compensation Act:

The Legislature recently converted the workers' compensation system in Oklahoma from judicial to administrative by adopting the Administrative Workers' Compensation Act. Laws 2013, c. 208. In doing so, the Legislature implemented the following standard of judicial review for Commission decisions:

The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision.

85A O.S. Supp.2013 78(C).

This standard of review is substantially the same as that provided for the judicial review of final agency decisions in individual proceedings under the Administrative Procedures Act (APA), 75 O.S.2011 322(1). Therefore, we are guided by case law under the APA in understanding our role in appeals from the Commission.

On review of an administrative decision, we may only disturb the decision if one of the statutory grounds is shown. *Young v. State ex rel. Dep't of Human Servs.*, 2005 OK CIV APP 58, ¶ 12, 119 P.3d 1279, 1284. We are not entitled to substitute our judgment for that of the agency as to the weight of the evidence on fact questions. *Id.* On fact issues we will examine the record only to determine if the evidence supportive of the order possesses sufficient substance as to induce a conviction as to the material facts. *Union Texas Petroleum v. Corp. Com'n of State of Okl.*, 1981 OK 86, ¶ 31, 651 P.2d 652, 662.

### III.  Analysis

¶ 12  Under the Administrative Workers' Compensation Act, an employer must provide surgery that is reasonably necessary in connection with the injury. 85A O.S. Supp.2013 50(A). Whether a treatment recommendation is reasonably necessary in connection with the injury is a question of fact. *Estenson*, 2015 OK CIV APP 71, ¶ 12, 357 P.3d 486. The Commission may appoint an IME to assist it in determining any issue before it. 112(B). When surgery is recommended by a treating physician and upon the request of the employer, an IME shall be appointed to determine the reasonableness and necessity of the recommended surgery. *Id.* Because 112(B) must be considered together with 50(A), the necessity of the surgery includes whether the surgery is reasonably necessary in connection with the injury. The attorneys are responsible for transmitting the employee's medical records to the IME within ten days of appointment. 112(E). If the Commission does not follow the opinion of the IME on any issue, the ALJ or Board of Review member shall set out the reasons for deviating from the opinion of the

IME. 112(I). The IME's opinion shall be followed unless there is clear and convincing evidence to the contrary. *Id.*

¶ 13  In the present case, the treating physician recommended surgery. At Employer's request, the ALJ appointed an IME and asked that he address whether the surgery was reasonable and necessary. The ALJ failed to request that the IME determine whether the surgery was reasonably necessary in connection with the injury, and the attorneys failed to provide him with all of the relevant medical records. As a result, the IME initially reported his conclusion without the relevant records and without the relevant instructions, giving sworn testimony that surgery was necessary to correct an acute on-the-job injury. After he was provided relevant x-ray films, he prepared a supplemental report amending his opinion.

¶ 14  The IME's amended opinion was that the source of Claimant's pain was an underlying problem that was neither caused nor worsened by the accidental on-the-job injury. Although the surgery was reasonable and necessary to fix the condition, the IME did not believe it was connected to the injury. Both the treating doctor and the IME refer to Claimant's condition as degenerative joint disease. Degenerative joint disease that is the result of natural degenerative process is not compensable. 2(b)(5).

¶ 15  Whether degeneration is the result of natural degenerative process or an acute injury is a question of fact. The IME's opinion is evidence that the degenerative condition requiring surgery was the result of a natural degenerative process and was not connected to the injury. The Commission did not follow this opinion. It cited, as clear and convincing evidence supporting its decision, the absence of any evidence controverting Claimant's testimony that he had no knee pain prior to the accident and had experienced pain ever since the accident. This testimony, combined with the opinions of Claimant's successive treating physicians, is such that the fact finder could reasonably form a firm belief or conviction that the required burden of proof was met. On review, our role is not to reweigh the evidence, but to determine whether the Commission's decision is clearly erroneous in view

of the reliable, material, probative and substantial competent evidence. The record contains reliable, material, probative and substantial competent evidence supporting the Commission's decision. We are unable to find the Commission's decision is clearly erroneous. It is therefore AFFIRMED.

BUETTNER, V.C.J., P.J., concurs.

MITCHELL, J., dissents with opinion:

¶16 The evidence was abundantly clear that Claimant had severe pre-existing degenerative joint disease in his knee. The knee replacement which the trial court has authorized has everything to do with Claimant's preexisting disease process and nothing to do with his work-related fall and "contusion." Claimant's degenerative joint disease is not compensable. See 85A O.S. 2(b)(5). Whether or not Claimant was symptomatic before he fell and bruised his knee is irrelevant. The authorized knee replacement surgery is contrary to law and I respectfully dissent.